IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL DIEFFENBACH, JR., | : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : | |
| | : | |
| RBS CITIZENS, N.A., | : | |
| d/b/a CITIZENS BANK , | : | NO. 11-2800 |
| Defendant. | : | |

**M E M O R A N D U M**

GENE E.K. PRATTER, J.,                                                                          MAY 8, 2012


**I.      INTRODUCTION**

Plaintiff Paul Dieffenbach, Jr. claims that RBS Citizens, N.A. ("Citizens Bank")

improperly terminated his credit card without justification in violation of the Equal Credit

Opportunity Act ("ECOA"), 15 U.S.C. § 1691, et seq., and failed to provide him with 45 days

advance written notice of a significant change in his credit account terms in violation of the

Credit Card Accountability Responsibility and Disclosure Act of 2009 (the "Credit CARD Act").

15 U.S.C. § 1637, et seq.

Now before the Court are the parties' cross-motions for summary judgment.  For the

following reasons, the Court grants Citizens Bank's motion and denies Mr. Dieffenbach's

motion.


**II.     FACTUAL BACKGROUND**

Sometime in 2008, Citizens Bank issued Mr. Dieffenbach a Citizens Bank Platinum

Credit Card.  See Def. Ex. I, at 4.  The card was set to expire in November 2010.  Id.  In

interrogatory responses, Mr. Dieffenbach attested that "during the life of the subject card, [he]

never missed a payment, never requested an extension of time to make a payment, . . . never

exceeded his stated credit limit" and "never requested an increase in his credit limit nor any modification of the terms of the card/account." Def. Ex. F, at 2.

Nevertheless, on November 5, 2010, Citizens Bank sent Mr. Dieffenbach a letter informing him that it would not be renewing his credit card account because he did not score a sufficient number of points in Citizens Bank's scoring system for evaluating accounts. Def. Ex. G. The letter identified that four reasons for his low score: "[1] Payments this month as a percentage of the amount due for last month, [2] Maximum balance as a percentage of credit limit in the last 3 cycles, [3] Length of time account has been opened, [and] [4] Total cash balances as a % of total balances in the last 3 cycles." Id. After Mr. Dieffenbach objected to the bank's decision, Citizens Bank sent him a second letter on December 30, 2010 reiterating its reasoning for closing his account and assuring him that its decision and reasoning were based on his personal credit history. Def. Ex. H.

Mr. Dieffenbach filed a complaint against Citizens Bank on April 27, 2011 alleging violations of the ECOA and the Credit CARD Act. Following discovery, on January 20, 2012, Citizens Bank filed a timely motion for summary judgment (Doc. No. 20).[1] However, because this case was designated for arbitration under the Local Rules of this Court, and the Court had appointed an arbitrator on January 10, 2012, the filing of Citizens Bank's motion did not stay the arbitration. See Local Rule 53.2(4)(C). Accordingly, the parties proceeded to arbitration, following which a trial de novo was requested. In addition, Mr. Dieffenbach filed a cross-motion for summary judgment, and on May 7, 2012, filed a "Supplemental Motion for Summary Judgment as to Residual Obligation Issue." The bank's motion remained extant.

---

[1] Despite Mr. Dieffenbach's protestations to the contrary, the Court's June 10, 2011 Scheduling Order states that "any summary judgment . . . motions shall be filed and served no later than thirty (30) days prior to the date of the arbitration trial set forth in the Clerk of the Court's notice to the parties." (Doc. No. 4). Citizens Bank filed its motion on January 20, 2012 and the arbitration trial was held on February 23, 2012.

## III.   LEGAL STANDARD

Upon motion of a party, summary judgment is appropriate if, "citing to particular parts of

materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other

materials," the moving party persuades the district court that "there exists no genuine issue of

material fact that would permit a reasonable jury to find for the nonmoving party." FED. R. CIV.

P. 56(c); Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).  An issue is "genuine" if a

reasonable jury could possibly hold in the non-movant's favor with regard to that issue.  See

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if its

resolution could affect the result of the suit under governing law.  Id.

In evaluating a summary judgment motion, the court "must view the facts in the light

most favorable to the non-moving party," and make every reasonable inference in that party's

favor.  Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  If, after making

all reasonable inferences in favor of the non-moving party, the court determines that there is no

genuine issue of material fact, summary judgment is appropriate.  Celotex Corp. v. Catrett, 477

U.S. 217, 322 (1986); Wisniewski v. Johns–Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The same standards and burdens apply on cross motions for summary judgment.  See

Applemans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987); Peters Twp. Sch. Dist. v.

Hartford Accident and Indem. Co., 833 F.2d 32, 34 (3d Cir. 1987).  Cross motions for summary

judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and
> the making of such inherently contradictory claims does not constitute an agreement that
> if one is rejected the other is necessarily justified or that the losing party waived judicial
> consideration and determination whether genuine issues of material fact exist.

<u>Transportes Ferreos de Venezuela II CA v. NKK Corp.</u>, 239 F.3d 555, 560 (3d Cir. 2001)

(quoting <u>Rains v. Cascade Indus., Inc.</u>, 402 F.2d 241, 245 (3d Cir. 1968)).  Of course, when

presented with cross motions for summary judgment, the Court must and does consider the

motions separately.  <u>See</u> <u>Williams v. Phila. Hous. Auth.</u>, 834 F. Supp. 794, 797 (E.D. Pa. 1993),

<u>aff'd</u>, 27 F.3d 560 (3d Cir. 1994).


**IV.    DISCUSSION**

Mr. Dieffenbach alleges that Citizens Bank violated "federal fair-credit laws" when it

prematurely cancelled his credit card account without proper notice or explanation.  Specifically,

he contends that the bank failed to provide him with sufficient explanation of its adverse action

under ECOA, or notice of the "significant change" to his account under the Credit CARD Act.

Citizens Bank argues that the notice provisions of both statutes are inapplicable to Mr.

Dieffenbach because ECOA only applies where discrimination has been alleged, and a

"significant change" under the Credit CARD Act does not include the cancellation of an account.

For the reasons that follow, the Court grants Citizens Bank's motion for summary

judgment and denies both of Mr. Dieffenbach's motions as untimely.[2]

---

[2] The Court's June 10, 2011 Scheduling Order provides that "[n]o dispositive motions will be considered if filed after the arbitration unless good cause is shown as to why the motion could not have been reasonably anticipated and filed prior to arbitration."  The arbitration in this matter occurred on February 23, 2012.  Mr. Dieffenbach filed his cross-motion for summary judgment on March 9, 2012.  Likewise, Mr. Dieffenbach's supplemental motion for summary judgment was filed on May 7, 2012.  He has offered no explanation for the untimeliness of his motions.  However, at the Court's April 4, 2012 Status Conference, Mr. Dieffenbach suggested that he did not intend the March 9, 2012 filing to be characterized as a separate motion, but that his "motion for summary judgment was in response to [Citizens Bank's] motion for summary judgment."  Tr. at 19-21.  Accordingly, the Court denies both Mr. Dieffenbach's motion for summary judgment and his supplemental motion for summary judgment as untimely, but construes them both as further reply in opposition to Citizens Bank's motion for summary judgment.

A.    ECOA

ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age."  15 U.S.C. § 1691(a).  As a "strong and necessary adjunct" to ECOA's proscriptions against discrimination in credit transactions, the statute includes a notice requirement, 15 U.S.C. § 1691(d), "for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices."  Fischl v. Gen. Motors Acceptance Corp., 708 F.2d 143, 146 (5th Cir.1983) (citing S. Rep. No. 94–589, 94th Cong., 2d Sess., reprinted in 1976 U.S. Code Cong. & Admin. News, pp. 403, 406).

The notice provision requires that "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1).  A creditor can take three types of actions in response to an application for credit: approval, counteroffer, or adverse action.  See Wenglicki v. Tribeca Lending Corp., No. 07-4522, 2009 WL 2195221, at *5 (E.D. Pa. July 22, 2009).  An "adverse action" includes the "denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested."  15 U.S.C. § 1691(d)(6).  In the event that a creditor takes an adverse action on an existing account, ECOA's accompanying regulation, known as Regulation B, requires that the creditor send written notice of the action to the applicant within 30 days after taking the adverse action on the account. 12 C.F.R. § 202.9(a)(1)(iii).

In addition to the timing requirements, Regulation B specifies particular content that must appear in the notification when an adverse action is taken.  In particular, the notification must be in writing and contain (1) a statement of the action taken, (2) the name and address of the creditor, (3) a statement of the provisions of § 701(a) of the Act, (4) the name and address of the

5

federal agency that administers compliance with respect to the creditor, and (5) . . . (i) a

statement of specific reasons for the action taken.  12 C.F.R. § 202.9(a)(2).

In spite of Citizens Bank's arguments to the contrary, § 1691(d) of "ECOA provides broad

protection to <u>all</u> credit applicants," and plaintiffs alleging a violation of the notice requirement

need not allege discrimination or be members of a protected class.  <u>D'Argenzio v. Bank of

America Corp.</u>, No. 09-5604, 2011 WL 5873032, at *6 (D.N.J. Nov. 21, 2011) (emphasis added);

<u>see</u> <u>also</u> <u>Wenglicki</u>, 2009 WL 2195221, at *5 (noting that in order for an ECOA notice claim to

succeed, "there must, at the very least, be a creditor and an action of which the consumer was not

made aware"); <u>Cannon v. Metro Ford, Inc.</u>, 242 F. Supp. 2d 1322, 1331 (S.D. Fla. 2002)

("Subsection (d) [of the ECOA] requires a creditor to provide written notification to all credit

applicants, regardless of whether the applicant is a member of a protected class."); <u>Costa v. Mauro

Chevrolet, Inc.</u>, 390 F. Supp. 2d 720, 729-29 (N.D. Ill. 2005) (holding that failure to provide

notice of an adverse action to the credit applicant is actionable under the ECOA without regard to

allegations of discrimination).  Indeed, ECOA broadly defines the term "applicant" as "any person

who applies to a creditor" without requiring membership in a protected class. 15 U.S.C. §

1691a(b); <u>cf</u>. <u>Fischl v. General Motors Acceptance Corp.</u>, 708 F.2d 143, 146 (5th Cir.1983)

(explaining that the notice requirement was also added for the broader purpose of allowing

"rejected credit applicants [to] be able to learn where and how their credit status is deficient").

There is no dispute between Mr. Dieffenbach and Citizens Bank regarding the timeliness

of the notice set to Mr. Dieffenbach under ECOA.  Rather, Mr. Dieffenbach, maintains that the

text of the notice of adverse action sent to him by Citizens Bank failed to satisfy the content

requirements of Regulation B.  In particular, he asserts that the notice was "vague and non-

informative." <u>See</u> Def. Ex. E & F.

"Whether a creditor is in compliance with the ECOA's notice requirements is a question

of law." Pettineo v. GE Money Bank, No. 10-2569, 2011 WL 1163308, at *5 (E.D. Pa. Mar. 30,

2011) (quoting Ricciardi v. Ameriquest Mortg. Co., Civ. A. No. 03–2995, 2004 WL 739965, at *3

(E.D. Pa. Mar. 15, 2004).  The notice Citizens Bank sent to Mr. Dieffenbach on November 5,

2010, expressly informed Mr. Dieffenbach of the "specific reasons for the action taken" sufficient

to satisfy the requirements of Regulation B.  12 C.F.R. § 202.9(a)(2)(i); see Def. Mot. G.

Specifically, the notice informed Mr. Dieffenbach that his account "did not score a sufficient

number of points for renewal" under the bank's scoring system for evaluating accounts because of

four factors: "[1] Payments this month as a percentage of the amount due for last month, [2]

Maximum balance as a percentage of credit limit in the last 3 cycles, [3] Length of time account

has been opened, [and] [4] Total cash balances as a % of total balances in the last 3 cycles." Id.

This account explains the reasoning for the bank's decision not to renew Mr. Dieffenbach's credit

card.

In both his interrogatory responses and in his brief in opposition to Citizens Bank's

motion, Mr. Dieffenbach also asserts that the bank "failed to inform [him] that [the] adverse-

action decision was based in large part on information received from [a] third-party information

provider." See Def. Ex. E & F; Pl. Opp. at 2.  In his interrogatory responses, Mr. Dieffenbach

argues that 15 U.S.C. § 1691(e) mandates such disclosure by Citizens Bank.  However, neither 15

U.S.C. § 1691(e), 15 U.S.C. § 1691e, nor any provision of the ECOA contains such a

requirement.  In his opposition brief, Mr. Dieffenbach similarly argues that the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. § 1681(g), requires lenders to disclose to an applicant when

an adverse action is based on information obtained from a credit reporting agency.  However, that

provision of the FCRA places obligations on credit reporting agencies, not on creditors.

Regardless, Mr. Dieffenbach has not alleged any causes of action under the FCRA.

Accordingly, the Court grants Citizens Bank's motion for summary judgment as it pertains to Mr. Dieffenbach's ECOA claim.

### B.      Credit CARD Act

In May 2009, Congress enacted the Credit CARD Act to amend the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq.  TILA's stated purpose was "to promote consumers' 'informed use of credit' by requiring 'meaningful disclosure of credit terms'. . . ." Chase Bank USA, N.A. v. McCoy, 131 S. Ct. 871, 874 (2011) (quoting 15 U.S.C. § 1601(a)).  The Credit CARD Act and Regulation Z, both TILA and the Credit Card Act's implementing regulation, "establishe[d] a number of new substantive and disclosure requirements to establish fair and transparent practices pertaining to open-end consumer credit plans, including credit card accounts."  Truth in Lending, 75 Fed. Reg. 7658, 7658 (Feb. 22, 2010) (codified at 12 C.F.R. pt. 226).

Mr. Dieffenbach asserts that Citizens Bank violated the Credit CARD Act's notice requirement when it failed to provide him with notice 45 days in advance of the cancellation his account, which he claims constitutes a "significant change" in account terms.  15 U.S.C. § 1637(i); 12 C.F.R. § 226.9(c)(2).  The 45-day notice provision of the Credit CARD Act provides:

(i) Advance notice of rate increase and other changes required.

> (1) Advance notice of increase in interest rate required.  In the case of any credit card account under an open end consumer credit plan, a creditor shall provide a written notice of an increase in an annual percentage rate . . . not later than 45 days prior to the effective date of the increase.

> (2) Advance notice of other significant changes required.  In the case of any credit card account under an open end consumer credit plan, a creditor shall provide a written notice of any significant change, as determined by rule of the Bureau, in the terms (including an increase in any fee or finance charge, other than as provided in paragraph (1)) of the cardholder agreement between the creditor and the obligor,

not later than 45 days prior to the effective date of the change.

(3) Notice of right to cancel.  Each notice required by paragraph (1) or (2) shall be made in a clear and conspicuous manner, and shall contain a brief statement of the right of the obligor to cancel the account pursuant to rules established by the Bureau before the effective date of the subject rate increase or other change.

(4) Rule of construction.  Closure or cancellation of an account by the obligor shall not constitute a default under an existing cardholder agreement, and shall not trigger an obligation to immediately repay the obligation in full or through a method that is less beneficial to the obligor than one of the methods described in section 1666i-1(c)(2) of this title, or the imposition of any other penalty or fee.

15 U.S.C. § 1637(i) (emphasis added).  The examples of what constitutes a "significant change" in the statute (i.e., "an increase in any fee or finance charge") do not include closure of the cardholder's account.

Likewise, the Credit CARD Act's implementing regulations do not support Mr. Dieffenbach's claim that a creditor's cancellation of a cardholder's account constitutes a "significant change."  The provisions of Regulation Z that define "significant change in account terms" as it relates to 15 U.S.C. § 1637(i) are located at 12 C.F.R. § 226.9(c)(2)(ii), which provides:

(ii) Significant changes in account terms. For purposes of this section, a "significant change in account terms" means a change to a term required to be disclosed under § 226.6(b)(1) and (b)(2), an increase in the required minimum periodic payment, a change to a term required to be disclosed under § 226.6(b)(4), or the acquisition of a security interest.

12 C.F.R. § 226.9(c)(2)(ii).  A cancellation or failure to renew a cardholder's account is not among the exclusive list of "significant changes in account terms" that are required be disclosed under 12 C.F.R. §§ 226.6(b)(1), (b)(2), or (b)(4), or any of the other circumstances detailed in 12 C.F.R. § 226.9(c)(2)(ii).[3]

---

[3] Consistent with the language of 15 U.S.C. § 1637(i)(4) and Regulation Z, the legislative history of the Credit CARD Act makes clear that the purpose of the 45-day notice requirement is to provide the cardholder the opportunity to cancel his or her account before the significant change is to take effect.  Indeed, a May 4, 2009 report

Mr. Dieffenbach argues that § 226.6(b)(2) of Regulation Z provides that a change in a cardholder's available credit line constitutes a "significant change," and that, therefore, a reduction of his available credit line to zero constitutes a "significant change in account terms" mandating 45-day notification. Mr. Dieffenbach, however, is mistaken. In support of his contention that a change in a cardholder's available credit line constitutes a significant change, Mr. Dieffenbach cites to a Federal Reserve System publication, Consumer Compliance Outlook, which offers a summary of the regulations implementing the Credit CARD Act. See Kenneth J. Benton, An Overview of the Regulation Z Rules Implementing the CARD Act, Consumer Compliance Outlook, 2010. In a footnote, the publication seems to suggest that "significant change" under Regulation Z included a change in the "amount of available credit." Id. at 7, n.8.

However, § 226.6(b)(2)(xiii) of the implementing regulations – the provision to which the Federal Reserve System publication refers – clarifies that changes in the amount of available credit must be disclosed only in circumstances where the creditor requires fees for the issuance or availability of credit equal to fifteen percent (15%) or more of the minimum credit limit. See 12 C.F.R. § 226.6(b)(2)(xiii). In other words, § 226.6(b)(2)(xiii) does not encompass the cancellation or failure to renew a credit card, but rather only covers situations where a creditor charges a fee for the issuance of *additional* credit.

Accordingly, the Court grants Citizens Bank's motion for summary judgment as it pertains to Mr. Dieffenbach's claim under the Credit CARD Act.[4]

---

from the Senate Committee on Banking, Housing, and Urban Affairs specified that a purpose of the act was to "require[] issuers to provide 45 days advance notice of interest rate increases, and grant[] cardholders the right to cancel the card and pay it off under the old terms." S. Rep. 111-16, at 7 (2009). To read a cancellation of a cardholder's account into the definition of "significant change" would be incongruous with the purpose and text of the statute.

[4]The Court recognizes that Mr. Dieffenbach, a layman who is perhaps unfamiliar with the oftentimes puzzling machinations of legislative drafting or statutory construction, may well wonder how cancellation of a credit account could, based upon common language usage, be outside the straightforward understanding of the words

## V.      CONCLUSION

For the foregoing reasons, the Court grants Citizens Bank's motion for summary judgment

and denies Mr. Dieffenbach's motion for summary judgment.

An appropriate Order consistent with this Memorandum follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

"substantial change."  In response to such an understandable query, the Court is constrained to point out that, given how fundamental the notion of account cancellation is, if Congress did intend to include that event among the circumstances the legislators believed should trigger the notice obligation, it would have been a comparatively easy concept to include expressly in the statute or, in the hands of the regulators, in the Regulations.  Because it appears in neither, its absence is yet additional cause for concluding that Citizens Bank's position here is the correct one.